**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**Pittsburgh DIVISION**

**IN RE:**

**David Richard Diller, Jr.**

**Debtor.**

_____/

**Case No.: 19-21358-CMB**
**Chapter 13**

## MOTION TO ALLOW LATE FILED PROOF OF CLAIM

PNC BANK, N.A. (hereinafter referred to as "Secured Creditor"), by and through undersigned counsel, files this *Motion to Allow Late Filed Proof of Claim*, requesting that this Court enter an Order pursuant to 11 U.S.C. § 105, and in support thereof states as follows:

1. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 501-502, Fed. R. Bankr. P. 3001, 3002, 3002.1, and 9006(b)(1), and all other applicable rules and statutes affecting the jurisdiction of the United States Bankruptcy Courts generally.

2. Secured Creditor holds a security interest in Debtor(s)' real property located at 575 Sarver Rd Sarver, PA 16055, by virtue of a Mortgage and Note.

3. On February 7, 2020 Secured Creditor filed its Proof of Claim reflecting a total secured claim of $95,989.24, and arrearage of $12,101.37.

4. Due to mistake and inadvertence, Secured Creditor's Proof of Claim was not filed prior to the Claims Bar Date of 6/11/2019.

5. Secured Creditor realizes the importance of adhering to the Claims Bar Date; however, from time to time, loans are acquired already at or past the Claims Bar Date.

6. Secured Creditor has filed this claim in good faith, to rectify either its own or a prior servicer's mistake.

7. Debtor will not be prejudiced by allowing the Proof of Claim to stand as of the Claims Bar Date. All amounts stated in the proof of claim are reasonable and permitted by the loan documents. Allowance of these amounts will ensure Debtor(s) the necessary fresh start in regard to Secured Creditor's claim.

WHEREFORE, Secured Creditor respectfully requests this Court enter an Order granting its Motion to Allow Late Filed Proof of Claim, pursuant to 11 U.S.C. § 105, and for such other and further relief as this court deems just and proper.

By: /s/ *Sheetal R. Shah-Jani*
Sheetal R. Shah-Jani, Esquire
State Bar No. 81760

ROBERTSON, ANSCHUTZ & SCHNEID, PL
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Tel: (561) 241-6901
Fax: (561) 241-1969
Email: sshahjani@rascrane.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 7th day of February 2020.  I also certify that the foregoing *Motion to Allow Late Filed Proof of Claim* was served on this day by United States Mail, Electronic Mail, or via the CM/ECF system to the parties on the service list stated below:

David Richard Diller, Jr.
575 Sarver Rd
Sarver, PA 16055


Dai Rosenblum, Esquire
254 New Castle Road Suite B
Butler, PA 16001-2529


Chapter 13 Trustee
Ronda J. Winnecour
Suite 3250, USX Tower
600 Grant Street
Pittsburgh, PA 15219

Office of the United States Trustee
Liberty Center.
1001 Liberty Avenue, Suite 970
Pittsburgh, PA 15222


By: /s/ *Sheetal R. Shah-Jani*
Sheetal R. Shah-Jani
State Bar No. 81760

ROBERTSON, ANSCHUTZ & SCHNEID, PL
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Tel: (561) 241-6901
Fax: (561) 241-1969
Email: sshahjani@rascrane.com

| **National City** | Equity Reserve℠ Agreement - Multi-State |
|---|---|
| | (Not to be Used for Lines Secured by a Texas Homestead) |

Date: 3/28/2008    Account No.

You, the undersigned, are opening an Equity Reserve Line of Credit (Line) with National City Bank, together with its successors and assigns, (Bank) and agree that the following material terms and conditions will apply to your Line.

**Line of Credit.** Your Line is an open-end line of credit which you may use to obtain cash advances (Advances) from time to time for a period of 10 years. At the end of the Draw Period Bank, in its discretion may amend this agreement to extend the Draw Period for one or more additional Draw Periods subject to all the same terms that otherwise apply to your account. If your Draw Period is not extended you may repay any outstanding balances during the Repayment Period as provided in the Payment section below.

The initial amount of your Line is $ 125000.00 (Credit Line). You have the option anytime during the Draw Period of this Agreement to create Fixed Rate Locks of all or part of your Line at a fixed rate and for a fixed payment. The Fixed Rate Lock (FRL) balance includes the FRL Advance Fee. Any amount you repay on the Line and/or on an FRL will be again available to you on the Line until the end of the Draw Period. If you make a payment by check of all or any portion of the outstanding principal balance of your Line and\or an FRL, the amount of such principal payment may not be made available to you to re-borrow until the Bank has determined that the payment check has cleared the financial institution on which it is drawn. Bank may reduce the amount of your Credit Line under certain conditions described in this Agreement.

**Advances.** You may obtain Advances under your Line by issuing Equity Reserve checks and special FRL checks (each a Check) supplied by Bank, by contacting Customer Service or by way of any other Bank approved plan. Bank will charge your Checks directly against your Line. You may make arrangements for an Advance on your Line to pay off any FRL at any time by contacting Customer Service at the address or phone number on your statement. You should notify Bank when you need more Checks. The minimum FRL Advance that you can receive using an FRL Check is $5,000. FRL Check Advances will automatically have a 20-year Repayment Term. You may contact Customer Service after a FRL Check posts to your Line to change the Repayment Term to one of the other available terms listed in the Fixed Rate Lock Advances section below, however, FRL Advances changed to another Repayment Term will be subject to finance charges at the annual percentage rate in effect the day the new FRL Repayment Term is applied by Customer Service. FRL Advances for terms other than 20 years may also be obtained by contacting Customer Service instead of by Check. FRL Checks for less than $5,000 will be posted as a Line Advance. You should also notify Bank immediately if your Checks are lost or stolen. (Please see the "Stop Payment Orders" section of this Agreement). Your statement will list Checks that have been paid, but the actual paid Checks will not be returned to you. You may request copies of paid Checks from the Bank, and a copying fee may be charged.

Bank will issue you a Card or Cards for use with the Line except in Connecticut, New York and Texas and in other states where such access is limited. The word Card can mean one or more credit cards or Automated Teller Machine (ATM) cards. You authorize Bank to issue you a Card for use with the Line. You may purchase goods or services from merchants who honor the Card. You may obtain Advances from Bank or any other financial institution that honors the Card. You may also obtain Advances by using a Personal Identification Number (PIN) for telephone banking or on-line banking Advances. Bank will charge all Advances to your Line.

If you allow someone else to use your Card or PIN and you want to stop such use, you must let Bank know in writing. You must notify Bank immediately if your Cards or PIN are lost or stolen, or you believe that some person may be using your Card(s) or PIN without permission. You will not use your Line after notifying Bank of loss, theft or unauthorized use of your Card(s) or PIN. You will not be held liable for any unauthorized use of the Card or PIN after you have notified Bank of the loss or theft by phone at 1-800-533-6596 or in writing at National City Card Services, P.O. Box 4092, Kalamazoo, Michigan 49003. (Otherwise you may be liable, but not for more than $50.) Bank may terminate the use of your Card, PIN or Checks if you lose your Card, PIN or Checks two times or more in a twelve-month period. Bank may also terminate the use of your Card or PIN if your new balance exceeds your Credit Line by 2% or if you are over limit for more than one billing cycle.

Bank will have no obligation to honor any Advance by any means if the resulting new balance of your Line would exceed your Credit Line; or after the Draw Period ends; or in the event of termination or suspension of your Credit Line under the conditions described in this Agreement, and upon Bank's request you will return Checks and/or Cards. Your Line may not be used for Internet lottery, betting or gambling transactions or for any illegal transactions.

Charges from foreign merchants and financial institutions may be made in a foreign currency. Bank will bill you in U.S. Dollars based on the exchange rate on the day Bank settles the transaction, plus any special currency exchange charges. In the case of VISA Accounts: the exchange rate applied to each such transaction is a rate selected by Visa form a range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or the government-mandated rate in effect for the applicable central processing date. In addition, Bank will charge a foreign transaction fee of 1% of the converted amount. Because of the special charges and possible differences in exchange rates between the time Bank settles and the time you initiated the transaction, the total charge for a foreign transaction may be greater than the cash advance or purchase at the time it was made.

**Finance Charge for Line and Fixed Rate Lock Advances and During the Repayment Period.**
a) **Line Advances.** Bank figures the finance charge on your Line by applying the periodic rate to the "average daily balance" of your Line. To get the "average daily balance of Line Advances", Bank takes the beginning balance of the Line each day, adds any new Advances including if applicable, any fee (other than annual, late payment, return payment or return check fees), and other debits, and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance" of Line Advances.

Advances are subject to finance charges from the date of transaction to the date payment in full of the outstanding balance is posted to the Line. The periodic rate of finance charge and the annual percentage rate are subject to change, based on the value of an index. The index in effect for each billing cycle shall be the "Prime Rate" of interest appearing in the Money Rates Table of The Wall Street Journal published on the first day of your Billing Cycle (or, if not published on that date, the last edition published prior to that date), rounded upward, if necessary, to the nearest .01% (Line Index).

The **ANNUAL PERCENTAGE RATE** is the Line Index plus   0.750   % (Line Margin). The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12. As of 3/27/2008   , the current periodic rate of **FINANCE CHARGE** is   .500   % per month, which corresponds to an **ANNUAL PERCENTAGE RATE** of   6.000   %.

The annual percentage rate and the periodic rate of finance charge may increase if the Line Index increases. In the event of an increase, the finance charge will increase and the minimum payment amount may increase. If the minimum payment amount is either 1.5% of the new balance or the total finance charges, an increase or decrease in the annual percentage rate will result in a corresponding increase or decrease in the minimum payment amount.

b) **Fixed Rate Lock Advances:** Bank figures the finance charge on each FRL by applying the periodic rate to the "average daily balance" of the FRL. To get the "average daily balance", Bank takes the beginning balance of the FRL each day and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides by the number of days in the billing cycle. This gives the "average daily balance" for each FRL.

Each FRL is subject to finance charges from the date of the transaction until paid in full. The periodic rate of finance charge and the annual percentage rate are determined and fixed on the business day the transaction posts to your Line. The index shall be the highest daily rate for 3 year Treasury notes with constant maturities from the 1st business day through the 11th last business day of the calendar month preceding the month in which the transaction posts to your Line, rounded, if necessary, to the nearest 0.125% (FRL Index). The FRL Index can be found in the Federal Reserve Statistical Release H.15 at www.federalreserve.gov/releases/h15.

The **ANNUAL PERCENTAGE RATE** is the FRL Index plus a margin (FRL Margin). The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12. As of 3/27/2008   , the current periodic rate of **FINANCE CHARGE** per month and corresponding **ANNUAL PERCENTAGE RATE** for each FRL Repayment Term at the applicable FRL Margin are listed in the table on the next page.

| FRL Repayment Term | FRL Margin | Monthly Periodic Rate of **FINANCE CHARGE** | **ANNUAL PERCENTAGE RATE** |
|---|---|---|---|
| **5-year FRL.** 60 monthly payments | 4.250 | 0.542 | 6.500 |
| **10-year FRL.** 120 monthly payments | 4.500 | 0.563 | 6.750 |
| **15-year FRL.** 180 monthly payments | 4.750 | 0.583 | 7.000 |
| **20-year FRL.** 240 monthly payments (automatic term for FRL checks you write) | 5.250 | 0.625 | 7.500 |
| **7-year "Interest Only" FRL.** 83 monthly payments of one penny plus finance charges on the FRL balance (including the FRL Advance Fee), followed by a balloon payment of the remaining balance in the 84th month. | 4.500 | 0.563 | 6.750 |

During the Draw Period, the Bank frequently features promotions that offer you a lower periodic rate of finance charge and annual percentage rate for FRL Advances. Please contact Customer Service at 1-800-738-3888 to determine whether such a promotional rate is available to you that is lower than the contract rate.

   **c) Both Line and Fixed Rate Lock Advances:** In no event shall the periodic rate of **FINANCE CHARGE** be more than 2.083% per month or less than 0.25% per month and in no event shall the **ANNUAL PERCENTAGE RATE** be more than 25.00% or less than 3.0%. The annual percentage rate includes only interest and not other costs. Your monthly statement will disclose the applicable annual percentage rate for the billing cycle.

   **d) Repayment Period:** Any amount outstanding other than FRLs will be converted to a Fixed Rate Lock balance on the last business day of your Draw Period and will be subject to finance charges based on the FRL Margin for the Fixed Rate Lock in the above table with a 240 month Repayment Term for balances of $10,000 or more or a 120 month Repayment Term for balances of less than $10,000 as stated in subsections (b) and (c) above. The index value is the highest FRL Index from the 1st business day through the 11th last business day of the calendar month preceding the month in which the Draw Period ends, rounded, if necessary, as provided in subsection (b) above.

**Other Finance Charges.** A Discount Fee **FINANCE CHARGE** of $ 0.00                (           % of Credit Line)
A Processing Fee **FINANCE CHARGE** of $
An FRL Advance Fee **FINANCE CHARGE** of $ 50.00 for each Fixed Rate Lock used.

**Other Charges.** In addition to finance charges, the following other charges will apply:
- An annual fee of $ 50.00     reflected on the monthly statement for the first billing cycle of each year of your Draw Period beginning with the thirteen billing cycle, whether or not you obtain Advances under your Line. This fee is not refundable.
- A late payment fee of the greater of 10% of the unpaid minimum payment or 40.00 , if Bank does not receive your minimum payment at the address shown on your statement within 10 days of the Due Date. Bank may charge an additional late payment fee for each billing cycle that your Line is past due.
- An overlimit fee of $ 25.00     whenever you go over your Credit Line. Bank may charge an additional $ 25.00     for each billing cycle that you remain over your Credit Line.
- A returned payment fee of $30 if you make a payment on your Line which is returned to Bank unpaid because of insufficient funds, a closed account, stop payment, or any other reason.
- A returned check fee of $30 if you write a Check that Bank dishonors under the "Advances" section of this Agreement.
- A stop payment fee of $30 for the service of stopping payment on a Check and a $30 service fee for renewal of each stop payment order
- A foreign transaction fee of 1% of the transaction amount. This fee is not applicable to transactions in the United States.
- An early termination fee of 1% of your Credit Line limit or $350.00, whichever is less, if you close your Line within the first 36 months.
- A document request fee of $6 per copy for service of providing copies. Bank will not charge you for documents Bank is required by law to give you at no charge.

Bank does not lose any of its other rights under this Agreement whether or not it charges late payment or overlimit fees. You also agree that Bank may also charge you a fee, not otherwise enumerated herein, for services that Bank performs for you that you have requested. The application of any fee shall not cure the default which initiated the fee.

**Closing Costs.**
   **Other Finance Charges.**   A Mortgage Filing Service Fee **FINANCE CHARGE** of $
   **Other Charges.**
   $                State Intangible Tax          $  175.00  PBL Appraisal              $   3.00   PBL Flood Zone Determination
   $                Title Examination             $           Title Insurance           $  81.00   PBL Property Report
   **Security Interest Charges**
   $  38.50  PBL  Filing Fees                     $           State Stamp Tax

**Security Interests.** Your Line will be secured by a mortgage (Mortgage) on your dwelling (Dwelling). If the Dwelling is your primary or secondary residence, you represent and warrant to Bank that at all times during the term of this Agreement your Dwelling, or a minimum of one unit of your multi-unit Dwelling, shall be occupied by you and shall not be used as rental property. Bank agrees to waive any security interest in the Dwelling to the extent it secures Advances which may be in excess of your Credit Line. You name Bank as loss payee and beneficiary of the proceeds of, and assign to Bank any unearned premiums of, all insurance connected with your Line. You must not adversely affect Bank's interest in the Dwelling by any action or inaction. You must keep the Dwelling in good condition, promptly pay all mortgages and other liens against the Dwelling, and promptly pay all taxes and assessments on the Dwelling. You must not sell or transfer title to the Dwelling without Bank's permission, or use the Dwelling for any illegal purpose.

**Property Insurance.** You must keep the Dwelling fully insured against loss or damage on terms that are acceptable to Bank to the extent permitted by law. You must carry flood insurance if required by federal law. **You may obtain property insurance or furnish existing property insurance from anyone that is acceptable to Bank provided the insurer is authorized to do business in the state or jurisdiction where the Dwelling is located or is an eligible surplus lines carrier** You agree to furnish Bank with written evidence of such insurance, with Bank named as loss payee and proof of payment of insurance premiums. If you fail to do so, Bank may buy insurance to protect Bank's interest and add the premium cost to the unpaid balance of your Line, subject to the same finance charges as Advances against your Line. You assign to Bank the proceeds from any such insurance policies up to the unpaid balance of your Line. Bank may apply such proceeds, including any return of unearned premiums and payments for claims under such policies, to reduce the unpaid balance of your Line. You irrevocably authorize Bank as your agent and on your behalf to negotiate, settle and release any claim under your insurance and to submit insurance claims for you and to receive and sign your name to any checks or drafts or related papers obtained from insurance companies.

**Line of Credit Protection Plan.** You have the option to purchase a debt cancellation agreement (the "Plan") from us. You are not required to purchase the Plan in order to obtain credit from us and the Plan will not be provided unless you sign a separate enrollment form and agree to pay the additional cost stated on that form. The monthly fee for the Plan will be charged to your Line as an Advance. If you elect to purchase the Plan you agree to (a) be bound by the Plan "Terms and Conditions" Addendum, which is incorporated herein by reference, including but not limited to any limitations, exclusions, or conditions contained therein and (b) maintain all insurance required by this Agreement.

**Tax Deductibility.** You should consult a tax advisor regarding the deductibility of interest and charges on your Line.

**Statements.** Bank agrees to mail or deliver to you a monthly statement for each billing cycle at the end of which there is a balance which is a debit or credit balance of more than $1 or on which a finance charge has been imposed. The balance is the sum of all outstanding Advance(s), fees, payments, other credits, other charges and debits, and finance charge(s).

**Payments.** Your payments will be due monthly. You may pay the entire unpaid balance of your Line and/or your FRL Advance(s) at any time. You are required to pay a minimum payment by the Due Date shown on your statement equal to the sum of the Line Minimum Payment and the FRL Minimum Payment for each FRL in use.
   **a) The Line Minimum Payment will equal** (select one)
      _X_ INTEREST ONLY OPTION:
         The Line Minimum Payment will equal the periodic finance charges that accrued on the outstanding Line balance during the preceding billing cycle as shown on each monthly statement (Interest Only Minimum Payment) plus any balance in excess of your Credit Limit; or
      ____ 1.5% OPTION:
         the greatest of: (i) 1.5% of the new balance as shown on each monthly statement, (ii) the periodic finance charges that accrued on the outstanding Line balance during the billing cycle as shown on the monthly statement, or (iii) $100.00 (or whatever portion of $100.00 is necessary to pay Bank in full) (1.5% Minimum Payment) plus any balance in excess of your Credit Limit.

**b) The FRL Minimum Payment is:** For all FRL's except the 7 year "Interest Only" FRL, the minimum payment is a fixed payment amount that is sufficient to pay off the FRL including the FRL Advance Fee, at the fixed rate applicable to that FRL calculated based on the number of monthly payments for the applicable FRL Repayment Term as described in the section of this Agreement called "Fixed Rate Lock Advances." If you choose the 7-year "Interest Only" FRL option, the minimum payment is 83 payments of one penny ($.01) plus the finance charges that accrued on the outstanding FRL balance which balance includes the FRL Advance Fee, at the fixed rate applicable to that FRL (as described in the section of this Agreement called "Fixed Rate Lock Advances") during the preceding billing cycle as shown on each monthly statement followed by one payment of the outstanding balance. Any amount still owing at the end of the billing cycle prior to the billing cycle containing the final payment will be added to the final minimum payment due. Additional payments on any FRL may be made at any time but you will continue to be obligated to make the fixed payment for the FRL as long as any amount is still owing on the FRL. The amount of any reduction in principal from a payment on an FRL will become available to you on your Line once it is posted, until the end of the Draw Period  If you make a payment by check of all or any portion of the outstanding principal balance of an FRL, the amount of such principal payment may not be made available to you to re-borrow until the Bank has determined that the payment check has cleared the financial institution on which it is drawn. If your Draw Period is not renewed then access to the Line will not be available during the Repayment Period

**c) Repayment Period.** The Minimum Payment may not fully repay the principal that is outstanding by the end of the Draw Period. If your Draw Period is not renewed for an additional term, during the Repayment Period you may continue to make scheduled payments on any FRL balances outstanding at the end of the Draw Period until they are paid in full  Additionally, any amount outstanding other than an FRL will be converted to a Fixed Rate Lock without an FRL Advance Fee on the last business day of your Draw Period and will be subject to then current finance charges for an FRL of equal Repayment Term as described in the sections of this Agreement called "Fixed Rate Lock Advances" and "Repayment Period." The total amount will be required to be repaid in two hundred forty (240) equal monthly payments for balances of $10,000 or more; or one hundred twenty (120) equal monthly payments for balances of less than $10,000. Any amount still owing after two hundred thirty nine (239) billing cycles or after one hundred nineteen (119) billing cycles respectively, will be added to the final minimum payment due.

Payments will be applied in the following order: First, to each FRL on a first in-first out basis for all unpaid periodic finance charges and then to the FRL's principal balance in an amount necessary to amortize the FRL within its amortization schedule, then to all unpaid periodic finance charges on the Line, then to all Other Charges, then to the Line. For introductory and promotional offer balances, payments to the Line are applied on the basis of the lowest rate balance first to highest rate balance last. If there are no balances on the Line, overpayments are applied as a prepayment to the FRL(s) on a first in-first out basis. If there are no balances on any FRL or on the Line, overpayments are credited to the Line and returned upon request. In order to make additional partial prepayments to an FRL or to prepay an FRL in full without paying off your Line, you must contact Customer Service to make arrangements to do so.

**Stop Payment Orders.** We agree to honor a stop payment order against a Check when received from you within a reasonable time prior to payment. A stop payment order becomes effective after we have actually received the order and had a reasonable time to process it, and the order will remain in effect for thirteen months. Our acceptance of a stop payment order does not mean that the Check has not yet been paid, and we shall have no liability resulting from the payment of a Check before your stop payment order becomes effective. A stop payment order may be renewed for successive periods equal to its original period of effectiveness if we receive a renewal notice prior to the order becoming ineffective.

A stop payment order against a Check must accurately describe it as to date, number, amount, and payee, and must correctly recite your name and the Account number  You agree that it is current industry standard to process stop payment orders by means of computer technology  Accordingly, your failure to provide the exact identification of Account number and Check number in order to identify the Check to be stopped will result in the Check being paid if presented, and we will not be liable for such payment. Errors in your name or the Account number, or inaccuracies in the description of the number, amount, issue date or payee on your written stop payment order shall relieve us from any liability for any mistaken payment or wrongful dishonor  Any errors on our written acknowledgment to you of a stop payment order must be reported by you in writing to our Customer Service Department within 10 calendar days of the written acknowledgment date. We shall not be liable for any mistaken payment or wrongful dishonor occurring after the 10-day period, unless errors or inaccuracies are so reported to us within the 10-day period

Before we will release a stop payment order, our Customer Service Department may require the receipt of a written request, signed by you, requesting the withdrawal of the order

In the event we recredit the Account for a paid Check, then you hereby assign to us all rights against third parties. You or any joint account holder may order a stop payment. You agree that we will not be obligated to reimburse you immediately upon notice of alleged wrongful payment; that it is your obligation to prove the fact and amount of damage suffered, and that in no case will we be liable for more than your actual damage.

We shall not be liable for any damages unless we have failed to act in good faith and exercise ordinary care. You agree to indemnify us and hold us harmless from any and all expenses incurred or damages suffered by us in honoring a stop payment order

To place a stop payment order, write to National City, Equity Reserve Stop Payment Department, 4661 E. Main Street, Columbus, Ohio 43251-0928.

**Termination of Line.** Bank can terminate your Line and require you to pay the entire outstanding balance in one payment if you breach a material obligation of this Agreement in that:
• You engage in fraud or material misrepresentation in connection with your Line.
• You do not meet the repayment terms of this Agreement.
• Your action or inaction adversely affects the collateral or Bank's rights in the collateral.

To the extent permitted by 11 USC 506, Bank shall be entitled to reasonable court costs and attorneys' fees for independent counsel that Bank hires (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you). Interest after termination, whether prior to or after judgment by a court of competent jurisdiction, shall accrue upon the outstanding unpaid balance at the rate determined under this Agreement until such balance is paid in full.

**Suspension or Reduction of Credit Line.** Bank can refuse to make additional extensions of credit or reduce your Line if you breach a material obligation of this Agreement in that:
• The value of the Dwelling securing your Line declines significantly below its present appraised value for purposes of the Credit Line.
• Bank reasonably believes you will not be able to meet the repayment requirements due to a material change in your financial circumstances.
• You are in default of a material obligation under this Agreement.
• Government action prevents the Bank from imposing the annual percentage rate provided for or impairs the Bank's security interest such that the value of the interest is less than 120 percent of the Credit Line.
• A regulatory agency has notified the Bank that continued Advances would constitute an unsafe or unsound practice.
• The maximum annual percentage rate is reached.
If your Line is suspended, and if you have selected the Interest Only Minimum Payment feature, then at Bank's option your Line Minimum Payment may be changed to the 1.5% Minimum Payment; and if you have used any FRL(s) then at Bank's option Bank may terminate the FRL(s) and transfer any FRL balances to your Line.

Bank will give you written notice of any such action and conditions for reinstating your credit privileges. Bank may reinstate your credit privileges when conditions leading to suspension are cured to Bank's satisfaction. Bank may require you to request reinstatement of credit privileges when the conditions leading to suspension or reduction of your Credit Line no longer exist. An additional title examination and other documentation may be required to reinstate your Line, and any costs associated with reinstatement will be paid by you where permitted by law

**Change in Terms.** Bank may change certain terms of this Agreement at any time by giving you 15 days prior notice:
• The index and margin used for this Line if the original index is no longer available.
• A change that you specifically agree to.
• A change that benefits you
• An insignificant change.
• Other changes permitted by applicable law
Any change in terms will apply to balances outstanding on the effective date of the change as well as to balances generated thereafter

**Choice of Law:** This Equity Reserve Line was made in Ohio. Accordingly, the provisions of this Agreement will be governed by (a) federal laws and regulations and (b) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws and regulations, and without regard to conflict of law principles.

**Other Provisions.** You shall promptly notify Bank of any change in circumstances which has a substantial adverse effect on your credit. You will furnish Bank with financial statements in a form satisfactory to Bank as Bank may request from time to time. Bank may also require a title examination and/or appraisal from time to time, the cost of which will be paid by you.

If this Agreement is signed by more than one borrower, each of you may draw Checks on the Line or use the Cards, and each and every borrower is jointly and severally liable for all Advances and charges on the Line. With reasonable notice to process the request, any of you may direct Bank to not make further Advances on the Line, however, reinstatement will only be made on the joint request of all of you

Your rights in your Line may not be assigned. Bank may transfer your Line and Bank's rights under this Agreement. The Mortgage may not be assumed by a subsequent purchaser of the Dwelling. All fees paid to Bank are not refundable. This Agreement is between you and Bank and except for successors or assigns as provided for by this Agreement, this Agreement will not confer any rights upon any third party; this Agreement, the mortgage, deed of trust or other security instrument perfecting our security interest and any attachments to such documents describe all agreements between you and Bank with

respect to the Line and there are no other agreements; you represent that you are competent to enter into this Agreement; Bank may waive or delay enforcing any of its rights without losing such rights; if this Line is not for a consumer purpose or you are not a natural person, you are not entitled to any rights afforded consumers under applicable law or regulations and disclosures included in this Agreement but not required by law are not an admission of such rights by Bank; all actions under this Agreement requiring Bank's consent are at Bank's sole discretion, and such consent may be withheld for any reason; all amounts owed under this Agreement shall be without relief from valuation and appraisement laws.

All of Bank's rights under this Agreement are valid to the extent permitted by applicable law. If it is determined for any reason that any part of this Agreement is invalid or unenforceable, this shall not affect the validity or enforcement of any other provision, and this Agreement will then read as if the invalid or unenforceable part were not there.

Bank may delay exercising any of its rights under this Agreement without losing them. We may accept late payments or partial payments without losing any of our rights. **If your payment is marked with the words "Paid In Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No.** If your payment is made to any other address, we may accept the payment without losing any of our rights.

The annual IRS Form 1098 will be issued only to the first borrower listed on this Agreement at origination and the designation of a borrower as first cannot be changed subsequently.

At Bank's option, Bank may designate an electronic or optically imaged reproduction of this Agreement or any other document related to your Line as an original document and if it does so, the reproduction may be relied on in full by all parties to the same extent as an original.

You can change any term of this Agreement only in a writing signed by us.

You agree that Bank shall not be liable for any damages unless Bank has failed to act in good faith and exercise ordinary care. You further agree that in no event shall Bank be liable for any consequential, indirect or special damages even if you have advised Bank of the possibility of such damages.

From time to time, we may offer you special rates for balance transfer transactions or introductory or promotional offers on your Line. If we do, we will advise you of the annual percentage rates and finance charges associated with the special rate offer, how long they will be in effect, the balances to which they will apply, and other terms of the special rate offer. Any special rate offer will be subject to the terms of the offer and this Agreement.

**You agree that except as otherwise provided by law, Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you that National City has or may obtain for the purposes, among other things, of evaluating credit applications or offering you products or services that National City believes may be of interest to you. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009. If you write to us, you must include your name, address, Line (account) number and social security number in your correspondence.** As used herein, the term "affiliates" means the current and future affiliates of Bank as identified in the privacy notice at www.nationalcity.com

You agree that you and Bank have an established business relationship and that, to the extent not prohibited by applicable law, National City may contact you to offer you products and services that National City thinks may be of interest to you. Such contacts are not unsolicited, and National City may contact you by telephone and with an automated dialing and announcing device or by fax at any telephone number you have given to us including the telephone number on your application, or by email or other form of electronic communication and we may monitor telephone calls with you to assure quality service.

**If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113.**

NOTICES. THE FOLLOWING NOTICES ARE GIVEN BY BANK ONLY TO THE EXTENT NOT INCONSISTENT WITH 12 U.S.C. SECTION 85 AND APPLICABLE FEDERAL REGULATIONS AND OPINIONS AND THE CHOICE OF LAW PROVISION SET FORTH HEREIN (WITH RESPECT TO WHICH BANK EXPRESSLY RESERVES ALL RIGHTS).

### NOTICE TO ALL BORROWERS

A negative credit report reflecting on your credit record may be submitted to a consumer (credit) reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, Locator # 7116, P.O. Box 5570, Cleveland, Ohio 44101-0570

**California.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

**Colorado:** If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

**Florida.** Documentary stamp tax in the amount required by Florida law has been paid in conjunction with the recording of the mortgage securing the indebtedness evidenced by this Agreement.

**Missouri. Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**New York. YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.**

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

**North Dakota:** THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

**Texas:** THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**COPY RECEIVED** You agree to be legally bound to all provisions of this Agreement. You acknowledge receipt of a completed copy of this Agreement, including important information below regarding your rights to dispute billing errors ("Your Billing Rights").

DAVID        R        DILLER
TYPE OR PRINT NAME

X _David R Diller_
SIGNATURE

TYPE OR PRINT NAME

X
SIGNATURE

TYPE OR PRINT NAME

X
SIGNATURE

TYPE OR PRINT NAME

X
SIGNATURE

Address of Dwelling: 575 SARVER RD            SARVER            PA        16055-9222

### IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account we will ask you for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

### YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and Line number
- The dollar amount of the suspected error
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**
If you have a problem with the quality of property or services that you purchased with your Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)    You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address, and

(b)    The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

© 2007 National City Corporation

Page 5 of 5                    (Rev. 10/31/07)

DILLER
MORTGAGEDEED

Instr:                           04/07/2008
Pages:4     F:$38.50             12 33PM
Michele Mustello
Butler County Recorder   MEPFIRST A

xlmh33y

When recorded mail to:
**FIRST AMERICAN TITLE INSURANCE**
**LENDERS ADVANTAGE**
**1100 SUPERIOR AVENUE, SUITE 200**
**CLEVELAND, OHIO  44114**
**ATTN:**

I hereby CERTIFY
that this document is
recorded in the
Recorder's Office
of Butler County,
Pennsylvania

Michele M. Mustello - Recorder of Deeds

# National City.

DAVID R DILLER

# Open-End Mortgage

(Advance Money Mortgage Securing Obligatory Future Advances)

**THIS MORTGAGE** is made on 3/28/2008  between DAVID R DILLER  UNMARRIED INDIVIDUAL _____ (whether one or more persons called "Owner") and National City Bank, with an office located at  6750 Miller Road, Brecksville, Ohio 44141 (called "Lender").

**WHEREAS,** DAVID R DILLER, UNMARRIED INDIVIDUAL                                                  DAVID R DILLER
whether one or more persons called "Borrower") has been granted a home equity variable rate credit line Account (called the "Account") by Lender with a Credit Line of $ __125000.00__ , as evidenced by an Account Agreement (called the "Agreement") dated __3/28/2008__ ; and

**WHEREAS,** Lender is obligated under the terms of the Agreement to make advances to Borrower in accordance with the terms of the Agreement up to the amount of the Credit Line; and

**WHEREAS,** Borrower has agreed to repay such obligatory advances and interest thereon in accordance with the terms of the Agreement.

**NOW, THEREFORE,** in consideration of the above premises and in order to secure to Lender the repayment of all amounts, with interest thereon, advanced to Borrower in accordance with the terms of the Agreement; the payment of all sums, with interest thereon, advanced in order to protect the security of this Mortgage, including taxes, assessments, insurance premiums and costs; the performance of all covenants contained in the Agreement and this Mortgage; the payment of Lender's costs of collection, including costs of suit and, if permitted by law, reasonable attorneys' fees if suit is filed or other action is taken to collect the sums owing or to protect the security of this Mortgage; and the payment of any extension, refinancing, renewal, modification, substitution or amendment of the Agreement (which are also called the "Agreement"), Owner does hereby mortgage, grant and convey to Lender all of the following described real estate, together with all improvements now or hereafter erected, and all easements, rights and appurtenances thereon, located at:

| 575 SARVER RD | SARVER | BUTLER |
|---|---|---|
| Street | Township/City/Municipality/Borough | County |

Commonwealth of Pennsylvania (the "Property"), which was conveyed to Owner by Deed dated _____ , and duly recorded in the office for the Recording of Deeds in said County in Deed Book No. _____ Page 0_____ Tax Parcel Number (or other Uniform Parcel Identifier, if any) __040-S5-21-0000__ , as the Property is therein described and, ☐ if this box is checked, as the Property is more particularly described in Exhibit "A", which is attached hereto and made a part hereof.

(Rev. 07/26/06) PG. 1 - LN0250PA

**TO HAVE AND TO HOLD** the same unto the said Lender, its successors and its assigns, FOREVER.

**PROVIDED, HOWEVER,** that should Borrower pay in full all sums secured by this Mortgage, and perform all covenants and agreements secured by this Mortgage, the estate hereby granted shall be discharged, provided Lender has no further obligation to make Advances under the Agreement.

Owner and Lender covenant and agree as follows:

1. **THIS IS AN ADVANCE MONEY MORTGAGE** - It is expressly understood and agreed that this Mortgage secures, inter alia, certain obligatory loans and advances to be made by Lender to Borrower in accordance with the terms of the Agreement, which future advances are secured by this Mortgage as if made on the date hereof.

2. Owner warrants and represents to Lender that Owner is the sole owner of the Property; has the right to mortgage, grant and convey the Property; that the Property is unencumbered, except for encumbrances now recorded; and that Owner will defend the title to the Property against all claims and demands except encumbrances now recorded.

3. Except for any notice required under applicable law to be given in another manner, any notice to Owner provided for in this Mortgage shall be given by delivering it personally or by mailing such notice by certified mail, addressed to Owner at the address of the Property or at such other address as Owner may designate by notice to Lender as provided herein; and any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Owner as provided herein. If notice is given by certified mail, it shall be deemed to have been given on the date of mailing.

4. Owner shall be in default under this Mortgage upon a default under the terms of the Agreement.

5. Upon default, to the extent permitted by law, after any notice required by law, Lender may at its option declare due and payable the unpaid balance of all sums secured by this Mortgage and may take any action allowed by law or under the terms of the Agreement or this Mortgage, including taking possession of the Property, collecting any and all rents and applying them to the amounts secured by this Mortgage and foreclosing the Mortgage. Lender shall recover its costs and reasonable attorneys' fees to enforce or foreclose the Mortgage, if permitted by law, including the federal Bankruptcy Code.

6. Any extension of time, modification or other accommodation which is granted by Lender to Borrower shall not require Owner's consent or operate to release in any manner any Owner under the terms of this Mortgage. Any forbearance by Lender in exercising any right or remedy under this Mortgage or otherwise afforded by applicable law shall not be a waiver of or preclude the exercise of any such right or remedy.

7. Lender's rights and remedies under this Mortgage or otherwise by law shall be cumulative and not alternative and may be exercised as often as necessary; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release of the same.

8. The covenants and agreements contained herein shall bind the Owner's heirs, personal representatives, successors and assigns. If more than one Owner signs this Mortgage, their obligations shall be joint and several. The rights and privileges contained herein shall inure to the Lender's successors and assigns. Lender can sell, transfer or assign this Mortgage without Owner's consent.

9. As additional security hereunder, Owner hereby assigns to Lender any and all leases on the Property, now existing or which may hereafter be made, together with any and all rents and Owner's rights as landlord under law; provided that Owner shall, prior to the declaration of an Event of Default, have the right to collect and retain such rents as they become due and payable.

10. If any provision of this Mortgage shall for any reason be held invalid or unenforceable, no other provision shall be affected thereby, and this Mortgage shall be construed as if the invalid or unenforceable provision had never been a part of it.

11. Owner will not sell, transfer or encumber the Property without Lender's written consent. Owner agrees to promptly pay when due all taxes, assessments, levies, obligations, other charges, mortgages and liens on or against the Property. Owner shall keep the Property in good repair, excepting only reasonable wear and tear. Owner will comply with all laws respecting ownership and use of the Property. Owner shall keep the Property insured against loss by fire, and all other risks and hazards as Lender shall require, including flood insurance if required by law, in such amounts as Lender shall require. Owner shall promptly pay, when due, any premiums on such insurance. Owner may obtain such insurance from any

insurer(s) of Owner's choice, provided that such insurer(s) shall be acceptable to Lender. All insurance policies shall contain loss payable clauses in favor of Lender, and Owner shall deliver evidence of such insurance to Lender. If Owner fails to pay all taxes, assessments, levies, obligations, other charges, prior mortgages and liens, insurance premiums or to keep the Property insured, Lender may at its option elect to pay the same, which shall thereupon be added to the indebtedness secured hereby and shall bear interest at the rate stated in the Agreement.

12. Owner's obligations under Paragraph 11 and Borrower's obligations to repay any amounts Lender advanced and to pay Lender's attorneys' fees and costs shall survive any judgment in mortgage foreclosure.

13. Subject to any prior mortgage, Owner assigns to Lender the proceeds of any award for condemnation or other taking of all or part of the Property or of a conveyance in lieu of condemnation.

14. Any Owner who signs this Mortgage but does not sign the Agreement does so only to mortgage Owner's interest in the Property to secure payment and performance of the Agreement and Owner does not agree to be personally liable on the Agreement.

15. This Mortgage is governed by the laws of Ohio, except to the extent otherwise required by the laws of Pennsylvania, and applicable federal law.

**IN WITNESS WHEREOF**, and intending to be legally bound, each Owner has duly executed this Mortgage the day and year first above written.

WITNESS

_Sandra X Crawford_
(SEAL)

_David R Diller_
DAVID R DILLER

(SEAL)

## ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA   )
                                ) SS
COUNTY OF _Butler_              )

On _March 28, 2008_, before me, the undersigned officer (who certifies that he/she is not an officer or director of National City Bank), personally appeared _David R. Diller_ known to me (or satisfactorily proven) to be the person(s) whose name(s) is (are) subscribed to the within instrument and acknowledged that, he/she/they executed the same for the purposes therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

My Commission Expires

_Barbara W. Simpson_
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Barbara A. Simpson, Notary Public
Buffalo Twp, Butler County
My Commission Expires April 9 2011
Member, Pennsylvania Association of Notaries

### CERTIFICATE OF RESIDENCE

I, _Sandra X Crawford_, do hereby certify that Mortgagee's precise residence is 6750 Miller Road, Brecksville, Ohio 44141.

_Sandra X Crawford_
Agent for Mortgagee

(Rev. 07/26/06) PG. 3 -

EXHIBIT A

All that certain property situated in the TOWNSHIP of
BUFFALO, in the County of BUTLER, COMMONWEALTH OF
PENNSYLVANIA , and being described as follows: MAP S5 PARCEL
21.  Being more fully described in a deed dated 03/23/95 and
recorded 03/31/95, among the land records of the County and
State set forth above, in Deed Volume 2513  and Page 133.
Permanent Parcel Number:  MAP S5 PARCEL 21
DAVID R. DILLER

575 SARVER ROAD, SARVER PA ▓▓▓▓▓▓▓
Loan Reference Number  :   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
First American Order No:   ▓▓▓▓▓▓
Identifier: L/FIRST AMERICAN LENDERS ADVANTAGE
▓▓▓▓▓▓ DILLER
                              PA

FIRST AMERICAN ELS
OPEN END MORTGAGE

MORTGAGEDEED_A

 EXHIBIT A

All that certain property situated in the TOWNSHIP of BUFFALO, in the County of BUTLER, COMMONWEALTH OF PENNSYLVANIA , and being described as follows: MAP S5 PARCEL 21. Being more fully described in a deed dated 03/23/95 and recorded 03/31/95, among the land records of the County and State set forth above, in Deed Volume 2513 and Page 133.
Permanent Parcel Number: MAP S5 PARCEL 21
DAVID R. DILLER

575 SARVER ROAD, SARVER PA [redacted]
Loan Reference Number : [redacted]
First American Order No: [redacted]
Identifier: L/FIRST AMERICAN LENDERS ADVANTAGE
[redacted] DILLER
PA
FIRST AMERICAN ELS
OPEN END MORTGAGE
[redacted]

MORTGAGEDEED_A
[redacted]

**PNCBANK**

### CERTIFICATE

The undersigned, Janet L. Deringer, Assistant Secretary of PNC Bank, National Association does hereby certify as follows:

1. National City Bank was a wholly owned subsidiary of National City Corporation.

2. Effective December 31, 2008, National City Corporation merged with and into The PNC Financial Services Group, Inc. and National City Bank became a wholly owned subsidiary of The PNC Financial Services Group, Inc.

3. Effective as of November 6, 2009, National City Bank and pursuant to approval granted by the United States Office of the Comptroller of the Currency (as evidenced by the official certification dated November 6, 2009 attached hereto as Exhibit "A"), was merged with and into PNC Bank, National Association.

4. PNC Bank, National Association is a duly organized and existing national banking association (Charter Number 1316) and wholly owned subsidiary of PNC Bancorp, Inc. (a wholly owned subsidiary of The PNC Financial Services Group, Inc.), having its main office located at 222 Delaware Avenue, Wilmington, Delaware 19801 and using federal Employer Identification Number 22-1146430.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of this Association this 6th day of November, 2009.

Janet L. Deringer



Member of The PNC Financial Services Group
One PNC Plaza  249 Fifth Avenue  Pittsburgh  Pennsylvania  15222 2707



M:\LGL\BOARD\CERT\NATIONAL CITY\NATIONAL CITY BANK.doc